**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP**

| | |
|---|---|
| ALAN SPARKS, individually and on behalf of a class of all similarly situated Class A shareholders,<br><br>              Plaintiff,<br><br>      vs.<br><br>GURNEY'S INN RESORT & SPA, LTD., GEORGE FILOPOULOS, 290 OLD MONTAUK, INC., 290 OLD MONTAUK ASSOCIATES, LLC and DOES 1-3,<br><br>              Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF AND PRELIMINARY AND PERMANENT INJUNCTION** |

Plaintiff, Alan Sparks, by and through his attorneys, alleges the following upon personal knowledge as to his own acts, and upon information and belief as to all other matters based in part upon the investigation conducted by his counsel, review of pertinent documents and the undisputed facts recited in U.S.D.J. Joseph F. Bianco's (U.S.D.J.; E.D.N.Y.) Memorandum and Order dated July 20, 2012 in *Gurney's Inn Resort & Spa, Ltd. V. Linda Benjamin*, (10-cv-3993, EDNY).

## I. NATURE OF THE ACTION

1. Plaintiff alleges that Defendant 290 Old Montauk, Inc. (the "Majority Owner") and its controlling person, defendant George Filopoulos, breached their fiduciary duties to Plaintiff and other minority Class A shareholders/timeshare owners of Gurney's by the acts and omissions described herein which have culminated in the imminent majority squeeze-out merger, (the "Proposed Merger") pursuant to which Majority Owner, through its wholly owned entity Defendant 290 Old Montauk Associates, LLC ("290 Associates") will squeeze-out minority

owners for an unfair price though an unfair process in derogation of every fiduciary duty owed by a Majority Owner to minority owners.

2. The squeeze-out merger is proposed to be accomplished after a shareholder vote for which Plaintiff and the Class have been provided with only minimal information in an Information Statement received by Plaintiff on March 19, 2018 only ten days before the vote and the deadline for Class A shareholders to decide whether to exercise their rights to elect for an appraisal under New York Business Corporation Law § 623 ("BCL"). The Information Statement omitted information within Defendants' control that is material to a shareholders decision on whether to accept the Majority Owner offer or elect for appraisal.

3. To induce minority owners to accept the Majority Owner's offer and forego appraisal, Majority Owner commissioned an appraisal from CBRE which valued <u>all</u> of Gurney's assets at (a gross undervaluation) $84 million dollars. Majority Owners proposes to pay only 95% of the appraised amount for the assets and has indicated it will vote its entire 83% ownership stake in favor of the squeeze-out merger (which requires only a 2/3 vote of shares outstanding).

4. In short, Plaintiff alleges that Majority Owner is in breach of its fiduciary duties as the Majority Owner controlled board of directors of Gurney's and therefore the squeeze-out merger should be enjoined pending the formulation and implementation of fair processes such as those required under the New York Court of Appeals decision *In re Kenneth Cole Production Ltd.* which will ensure the emergence of a fair price for Gurney's assets through a fair process.

5. Plaintiff thus seeks: (a) a declaration that defendants have violated and/or aided and abetted the breach of Majority Owners and Gurney's fiduciary duties; and (b) a preliminary and permanent injunction prohibiting defendants from implementing the current proposed

squeeze-out merger a "fair process" including but not limited to fully informative and accurate Information Statement for any proposed transaction that results in a fair price for Gurney's assets through a fair process.

## II.    THE PARTIES

6. Plaintiff resides in Arizona and is a Class A shareholder of Gurney's and was at all times relevant to the action.

7. Defendant Gurney's Inn Resort & Spa, Ltd. ("Gurney's) is a New York Corporation formed in 1981 owed by Plaintiff and other minority Class A shareowners/timeshare owners, and the Defendant 290 Old Montauk, Inc. ("290 Inc."). Gurney's owns 11.1 acres of oceanfront property in Montauk, New York. Gurney's is located at 290 Old Montauk Highway, Montauk, New York 11954. Gurney's primary sources of income includes the collection of maintenance fees from owners of timeshare units, as well as, guest room booking revenue and income from the restaurant, spa, and rentals. Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999.

8. Defendant George Filopoulos is the President of Gurney's and one of its three directors and co-owner of the Majority Owner.

9. Defendant 290 Old Montauk Associates, LLC ("290 Associates") is the Majority Owner of Gurney's by virtue of its ownership of 83.67% of the issued and outstanding shares of Class A common stock of Gurney's and control of its Board. Majority Owner's co-owner, Defendant George Filopoulos installed himself as President of Gurney's and is one of its three directors. It is hereafter referred to as the "Majority Owner."

10. Defendant 290 Old Montauk, Inc. is a wholly ("290 Inc.") is a wholly owned subsidiary of 290 Associates. It was formed in 2018 to serve as a "Merger-Sub" to facilitate the proposed squeeze-out merger.

11. Does 1 and 2 are the other directors of Gurney's, one of whom is an officer of the Majority Owner's co-owner, a Lloyd Goldman affiliate. By virtue of the Board composition, Majority Owner controls Gurney's Board.

### III.   JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333, by virtue of diversity of citizenship and an amount in controversy exclusive of interest and costs, in excess of $75,000, and the Class Action Fairness Act, 28 U.S.C. 1332(d). Plaintiff is a citizen of the State of Arizona. The Defendants are citizens of the State of New York or of states other than Arizona.

13. All of the Defendants are subject to service in New York, and this court therefore can obtain personal jurisdiction over them.

14. Venue is proper in this District because all of the Defendants conduct business in this district and Gurney's is located in this District.

### IV.   CLASS ACTION ALLEGATIONS

15. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(b)(1)(2) and (3) on behalf of himself and the other minority Class A stockholders of Gurney's (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

16. This action is properly maintainable as a class action because:

4

(a) The Class is so numerous that joinder of all members is impracticable. As of January 2010, there were approximately 657,900 shares of Gurney's Class A stock of which 17% are held by minority holders who are individuals and entities scattered throughout the country. The actual number of stockholders will be ascertained through discovery.

(b) There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Information Statement in violation of their fiduciary duties;

    ii) whether Defendants have abused their control of Gurney's to the detriment of the minority owners in breach of their fiduciary duties;

    iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to elect to vote on the Proposed Merger or elect an appraisal based on the materially incomplete and misleading Information Statement.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual member so

the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## V. FACTUAL ALLEGATIONS

### A. Gurney's Pre-2013

17. Gurney's is a 110 unit, Atlantic oceanfront resort, health and beauty spa, restaurant, and conference center located in Montauk, New York.

18. For approximately 60 years prior to 1982, Gurney's Inn. Corp. ("Gurney's Corp.") owned the Gurney's Inn Resort & Spa in Montauk, New York. In 1982, Gurney's Inn Resort & Spa, Ltd. ("Gurney's Limited") was formed a New York State time sharing cooperative. The formation occurred pursuant to an offering plan by which 51 group time sharing interests containing 109 timeshare units were authorized by the New York State Attorney General to be offered for sale.

19. On May 15, 1982, Gurney's issued an Offering plan (the "Offering Plan") to convert Gurney's from a vacation resort into a cooperative timeshare property by offering 51 weekly time sharing interests in units. According to the Offering Plan, the "principal purpose of this offering is the sale of cooperative apartments for use . . . as vacation homes by purchasers, for their own use and occupancy during vacation periods, with the ordinary concomitants of vacation home ownership subject to the unique features of the timeshare cooperative ownership."

20.   Pursuant to timeshare plan Gurney's Limited was authorized to and did issue two classes of stock. Class A stock was issued and sold to the timeshare owners who own collectively 450,985 shares and Class B which has since been converted to Class A stock owned by the Majority Owner.

21.   Purchasers of Gurney's timeshare units acquired a proprietary lease granting purchasers the right to use their units and Gurney's resort accommodations for a specified week of each calendar year. Ownership of these time-sharing units is separate from the issuance of Class A shares of Gurney's stock to time share purchasers. Unlike other timeshares, Plaintiff and the other minority holders are equity owners of all Gurney's assets.

**B.     In 2013, Majority Ownership Of Gurney's Passed To 290 Inc.**

22.   Defendant 290 Old Montauk now holds an 83.63% majority of the Class A shares and The Majority Owner will thus always prevail on all shareholder votes.

23.   As a consequence of increases in special assessments and maintenance fees, many Class A shareholders have been compelled to surrender their Class A shares, and Leases for the appurtenant timeshare units. The diminishing ranks of timeshare owners was demonstrated by the amount of Class A shares outstanding. Gurney's originally issued 750,000 of its Class A shares. Accordingly to Gurney's financial statements at December 31, 2006, 2007 and 2008, the amounts outstanding of Class shares were the following: 367,850; 363,000 and 349,300, respectively, all owned by timeshare owners. The present balance is considerably less.

24.   In or about 2013, the Majority Owner made an offer to acquire all the Class B shares and all of Gurney's Class A "treasury" shares.

25. The Class A shareholders were given an opportunity to vote on the sale but were not provided with all material information necessary to make an informed vote. Among the missing material information was:

- other competing offers to purchase the Class A and Class B interests and provide Gurney's with liquidity;

- extent of releases provided to directors and officers of Gurney's as part of the sale of interests to the Majority Owner;

- the appraised value of the assets sold to the Majority Owner;

- estimates of timeshare value;

- the timeshare owning Class A stockholders were treated unequally and were not all informed about the unequal treatment among timeshare owning Class A stockholders;

- undisclosed benefits to a number of the board as part of the transaction;

- the fact that the "negotiation" process of the sale of interests to the Majority Owner consisted of a lone director who did not represent the timeshare owners and who negotiated in secret with the Majority Owner.

26. The election in 2013 was imposed on Class A shareholders without any information regarding the value of the properties, the value of the Class B shares or the value of the timeshare owners' Class A shares or the treasury Class A shares.

27. The Majority Owner, thereafter contrived and schemed to deprive the timeshare owners of their equity and timeshare rights.

28. As part of the scheme, the present Majority Owner was allowed to purchase the "treasury shares" for an undisclosed amount for an indeterminate period of time but which were undervalued and were a "waste" of corporate assets.

29. As part of its acquisition of control of Gurney's, the Majority Owner hatched a plan to eventually squeeze-out the minority owners first by eliminating their leasehold timeshare rights and later by proposing an undervalued insider deal to foist a squeeze-out merger on the minority in which a false and misleading Information Statement would be used to try to dupe the minority into foregoing appraisal rights and consent to the Proposed Merger. However, from 2013 through the present, Majority Owner concealed the details of the plan from the minority shareholders.

30. The plan was actualized beginning in December 2017, when Majority Owner rammed through a vote to eliminate Majority Owner's timeshare interests. That vote was achieved through a false and misleading information and was an act of majority power abuse.

**C. The Information Statement For The Proposed Merger Does Not Provide Sufficient Information For A Class A Shareholder To Decide To Vote For The Proposed Merger Or Elect Appraisal Under BCL § 623**

31. The Notice describes the date of the meeting as "Monday March 29, 2018." However, Monday is March 26th, not March 29th. Moreover, the instructions on the Proxy at the bottom are also contradictory of the meeting date and time and accordingly render the Notice invalid. The documents in addition to the Notice do nothing to clarify the confusion. The postcard is similarly infirm in that it does not clarify the Proxy instructions.

32. Furthermore, the Information Statement is inadequate in the following respects:

   (i) There are no articulated reasons for the Board's recommendation and there is no disclosure of the factual basis for the recommendation.

   (ii) There is no explanation of the effect upon a shareholder's right to dissent who does not cast a vote in the election.

   (iii) The Information Statement contradicts itself by stating it is "Not A Solicitation" but also stating in bold print "the Board recommends that shareholders grant their consent for

9

       approval of the Merger, Merger Agreement and documents and transactions ancillary thereto."

(iv)   The Information Statement does not identify the "documents and transactions ancillary thereto" for which consent is sought.

(v)   Although the Board is recommending Minority Shareholders to vote in favor of the Merger the Information Statement does not explain that a vote in favor will forfeit that shareholder's appraisal rights.

(vi)   The Information Statement represents that there are "657,900 shares of the Company" but fails to disclose whether those are all Class A shares validly issued and outstanding and fully paid with no restrictions or preferences that would prevent equal treatment thereof.

(vii)   Since 290 Old Montauk will be receiving 100% of the shares of Gurney's as of the date of merger, shareholders are entitled to know exactly what 290 will be receiving as of that date. To do so, shareholders require updated audited financial statements. Defendants have provided only unaudited financial statements described as "December 2017" which differ in format from the Gurney's Inn Resort & Spa, Ltd. Financial Statements for the years ended December 31, 2015 and 2016 provided to minority shareholders in 2017. *See* Exhibit 10.

(viii)   The restricted access to the CBRE report does not allow for adequate analysis by shareholders. Since the "price per share" is based upon the appraisal of the "Property" by CBRE, shareholders are being left materially uniformed. Any shareholder who did not receive the Data Room email invite and/or was unable to log-in to see the Appraisal did not receive an adequate IS in a timely fashion.

(ix)   The Information Statement does not disclose who selected the appraiser or how it was selected. It only reveals the CBRE "was acceptable to the Class A Directors."

(x)   The Information Statement does not disclose why the Property was marketed only to "experienced hotel operations." Nor does it indicate when, how or to whom the property was marketed.

10

    (xi)    The financial statements provided are inadequate in that they are not audited or certified, nor do they contain any explanatory footnotes. The basis of preparation is nowhere disclosed, making comparison to previous financial statements impossible.

    (xii)    Since the completion of "transfer tax returns" is a condition of receiving the Merger Consideration, Gurney's was required to include such forms and instruction with the Information Statement.

    (xiii)    The Information Statement fails to disclose whether there was a Special Committee of independent directors involved in any aspect of the transaction and if so, who, and what were their powers and what did they do?

## D. The Majority Owner's Purchase Offer For Gurney's Class A Shares Grossly Undervalue The Assets

33. The Majority Owner, uninhibited by any Special Committee or independent directors, selected CBRE as the appraiser of Gurney's assets. CBRE insisted on avoiding any accountability for its appraisal by conditioning its engagement and dissemination of its report to Plaintiff and the Class on a strict confidentiality agreement, waiver and release of claims. CBRE appraisal of Gurney's assets was $84 million.

34. The $84 million figure preposterously undervalues Gurney's in light of the fact that the adjacent 9.1 acre oceanfront property known as "The Panoramic View" was sold in December 2015 for $70 million after a government auction following the prosecution for fraud of its then owners – Brian Callahan and Adam Manson.

35. The Panoramic property consists of 12 townhouses, three oceanfront beach cottages and fifty hotel rooms. It's only revenue source is room rentals and service fees on condominium units it has sold.

36. By contrast, Gurney's has 109 units; its rooms measure 500 square foot with ocean views; Gurney's owns 11.1 acres and has the only license in the East End of Long Island

allowing it to operate as "an ocean beach restaurant" as well as accommodations for weddings and business meetings. It owns six on-site food and beverage establishments which generate revenues. It offers spa, beauty salon and for-fee recreational activities from which it earns revenues.

37. The buyers of The Panoramic for $70 million were the Majority Owner of Gurney's.

38. As a comparable, The Panoramic runs a distant second to Gurney's in terms of rooms, acreage, room revenue, other revenue producing operations at Gurney's and a brand name worth millions of dollars.

39. The Majority Owner's purchase of The Panoramic for $70 million indicates that the $84 million CBRE estate vastly undervalues Gurney's.

40. Further evidence of the gross current undervaluation of Gurney's appears in a CBRE pre-2013 analysis of Gurney's as a reconstructed resort. Gurney's possesses a valuable brand name listed at its historic (2013) value at $5,000,000.00. The Panoramic has none of these valuable features.

41. That document indicates that CBRE estimated (prior to 2013) that Gurney's could be totally renovated for a cost of $153,058,155.00 and further estimated that if only 54 of its projected 108 units were to be fractionalized for 12 months, Gurney's then could sell 648 fractional shares for an estimated "Avg Fractional Unit Retail Sales Price" of $350,000. The gross proceeds from such sales would be $226,800,000.00 after satisfaction of all debt and equity contributions ($153,058,155.00), would leave $73,741,845.00 <u>cash</u> gross. Added to the hypothetical $73 million cash proceeds from sale of timeshares in <u>only</u> half of the 108 units should be: (i) land value; (ii) building value; (iii) value of furniture and fixtures; (iv) value of

service workers; (v) value of food and beverage operations generating revenue, income and cash flow for Gurney's; and (vi) value of spa, beauty, grooming operations; value of government granted entitlements (*i.e.* Gurney's has East End's only on beach food and beverage sale permits).

42. Clearly, CBRE's $84 million current appraisal, prima facie, appears to dramatically undervalue Gurney's. It is therefore not surprising that CBRE demanded a waiver and release from every shareholder as a condition of viewing (but not copying or retaining) the appraisal.

### FIRST CLAIM FOR RELIEF
### (Against Defendant Gurney's For Common Law Breach Of Fiduciary Duty And Against Defendants Filopoulos And 290 Associates For Majority Oppression Of Gurney's Minority Class A Shareholders)

43. Plaintiff repeats and realleges each and every allegation set forth in this complaint.

44. For reasons set forth above, Gurney's Class A shareholders had a reasonable expectation that their ownership interests in Gurney's time-sharing units would result in their receiving a reasonable monetary return or some other form of valuable consideration during the fifty-year term. Thus, Defendants' breaches of fiduciary duty, at the expense of Gurney's Class A shareholders, oppressed Gurney's shareholders, and denied them their reasonable expectations.

45. As a result of Defendants' breaches of their fiduciary obligations, Plaintiff's are entitled to rescind the 2013 vote, the 2017 vote and if consummated the Proposed Merger.

## SECOND CLAIM FOR RELIEF
**(Preliminary and Permanent Injunctive Relief Barring All Defendants From Consummating The Proposed Merger And Compelling The Majority Owner To Offer A Fair Price Achieved Through A Fair Process For The Minority Class A Shareholders)**

46. Plaintiff repeats and realleges each and every allegation set forth in this complaint.

47. Because Plaintiff has no adequate remedy at law, it is entitled to injunctive relief, preliminarily and permanently enjoining the Defendants and all of their agents, affiliates, and subsidiaries from consummating the Proposed Merger. Plaintiff and the Class are entitled to a permanent injunction requiring the Majority Owner to follow the "fair process" set forth by New York Court of Appeals in *Alpert* and *Kenneth Cole* decisions and to offer a fair price for all Class A minority owners as well as an option to retain their stock and timeshares.

## THIRD CLAIM FOR RELIEF
**(Declaratory Judgment That The 2013 Shareholder Vote And The 2017 Shareholder Votes Are Invalid Due To Gurney's And Majority Owners' Breach of Fiduciary Duties)**

48. Plaintiff repeats and realleges each and every allegation set forth in this complaint.

49. There is an actual controversy, within the meaning of 28 U.S.C. § 2201.

50. The Defendants owed and continue to owe fiduciary duties to the Plaintiff. Due to their positions as fiduciaries, Defendants specifically owned the Plaintiff the highest duties of care, fair dealing, good faith, and loyalty.

51. Among other things, the Defendants had a duty to properly evaluate, initiate, structure, time and make full disclosure of the transactions purportedly approved by shareholders in 2013 and 2017.

52. The Defendants violated these duties.

53. Defendants did not engage in fair dealing in connection with the 2013 vote and 2017 vote.

54. Defendants individually and collectively, violated and breached their duties of care, good faith, and loyalty.

55. In light of the Defendants' breach of fiduciary duties, the Plaintiff is entitled to a declaration from this Court that the 2013 vote and 2017 vote Acquisition were unlawfully approved and are therefore invalid and must be rescinded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment, in Plaintiff's favor as appropriate, against Defendants, jointly and severally, as follows:

A. Finding that the Defendants have breached their fiduciary duties to the Minority Class A shareholders;

B. Enjoining Defendants from further breaches of their fiduciary duties;

C. Enjoining Defendants from consummating the Proposed Merger;

D. Compelling Gurney's and the Majority Owner to offer Minority Shareholders a Fair Price achieved through a Fair Process for their Class A shares;

E. Ordering the Defendants to provide an accounting of Gurney's revenues, income, assets and operations;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowances for attorneys' and experts' fees and expenses; and

      G.      Granting such other or further relief as may be just and proper under the circumstances.

Dated: March 27, 2018

                                  SQUITIERI & FEARON, LLP

                                  By: _____
                                      Lee Squitieri
                                32 East 57th Street
                                12th Floor
                                New York, New York 10022
                                (212) 421-6492